BUFFALO COUNTY TELEPHONE COMPANY, APPELLEE, V.
BART TURNER, APPELLANT.

FILED DECEMBER 5, 1908.   No. 15,593.

1. Telephones: RENTS.  A rule of a rural telephone company that
   telephone rent must be paid six months in advance is reasonable,
   and a subscriber refusing to cómply therewith is not entitled to
   service from the company.

2. ———: ———: COUNTERCLAIM.  Nor will the existence of a coun-
   terclaim or set-off asserted by the subscriber, a large part òf
   which is exorbitant and illegal, justify him in demanding that
   he be given service without prepayment of charges as other sub-
   scribers pay.

3. ———: ———: DEDUCTIONS.  A telephone subscriber is presumed to
   know that his telephone is liable to get out of order, and, if it
   is situated in the country, that some time may elapse before it
   can be repaired, and such subscriber is only entitled to a deduc-
   tion from his bill subsequent to the expiration of a reasonable
   time after the company had notice of the trouble and has failed
   to repair it.

APPEAL from the district court for Buffalo county:
BRUNO O. HOSTETLER, JUDGE.  *Affirmed as modified.*

*Fred A. Nye,* for appellant.

*Warren Pratt, contra.*

ROOT, C.

Plaintiff is a corporation engaged in the telephone busi-
ness in the vicinity of Kearney.  Its stockholders, officers
and subscribers are farmers, who are served by connecting
the telephones with party wires which converge at Kear-
ney, and are there connected with a local switchboard
owned, controlled and operated by the Kearney Telephone
Company.  Plaintiff pays said company a fixed sum for
connecting the telephones of its subscribers to complete
service.  Plaintiff charges $1 a month, payable six months
in advance, for the use of its telephones.  Plaintiff's

business does not warrant the continuous employment of an electrician or mechanic to repair its telephones, but as repairs are called for it disconnects the faulty instrument and has it repaired in Kearney. Defendant is a stockholder in and a customer of plaintiff. In June, 1905, his telephone did not give satisfaction, and one of plaintiff's officers took it to Kearney for repairs. The instrument was not returned for a week, and defendant, at the suggestion of one of the plaintiff's directors, brought the instrument home with him one day when in Kearney on other business, and for this he insisted that he should receive from plaintiff $3 and an allowance of 25 cents for the week that he did not have the use of the telephone. When the semiannual rental of $6 became due in January, 1906, defendant refused to pay it unless given credit for $3.25, and in March plaintiff disconnected defendant's telephone. Defendant paid said rent, and there was no further difficulty until an attempt was made to collect the second instalment of rent for said year. Defendant refused to pay, because plaintiff would not allow him for the time his telephone was out of commission, nor his charges for services hereinbefore referred to, plus a charge of $1.50 for reconnecting the telephone in March, 1906. Defendant would not permit plaintiff's employee to take its telephone out of his house. The employee disabled said instrument, and later the line from defendant's telephone to the party wire was disconnected. Defendant repaired the telephone, reconnected it with the party line, and insisted upon service through the switchboard of the Kearney company; and plaintiff brought this action for an injunction against defendant. The district court perpetually enjoined defendant from in any manner meddling with the appliances of plaintiff, and from making or permitting any connections of the telephone in defendant's house with the lines of plaintiff, or from using said telephone in connection with said lines. Defendant appeals.

1. It is apparent that neither party to this controversy is entirely without fault. Plaintiff is a public service

corporation, and should render to each individual in situation to patronize it equal service and upon the same terms. Defendant was not notified that, if he did not pay his rental as demanded, the service would be discontinued and the actual work of disconnecting was done after dusk, and so adroitly in one instance that no one other than a skilled lineman could detect the severance of the lead wire. On the other hand, plaintiff is a small concern, evidently created for neighborhood accommodation, and not as a source of profit to its stockholders. Its resources are slender, and its ability to serve its customers and keep its plant in condition for efficient service depends upon prompt payment of the rentals charged. If a considerable fraction of its subscribers become contentious and refuse to pay the tolls and charges unless counterclaims for faulty service or for insignificant acts performed for its benefit are deducted from the rental, plaintiff would be without means to pay for switching charges and maintenance of its lines and instruments. *Vanderberg v. Kansas City M. G. Co.*, 126 Mo. App. 600, 105 S. W. 17; *Rushville Cooperative T. Co. v. Irvin*, 27 Ind. App. 62, 59 N. E. 327. Although defendant was not specifically informed that, if he did not pay, he would not be permitted to receive service, we are of opinion that he did know who was responsible for the discontinuance of the service and the reasons therefor. Defendant's demand to be paid $3 for bringing the instrument from Kearney to his home was exorbitant, and was properly disallowed. It appears from the evidence that none of the other stockholders or the directors of the company had ever charged for like services, and, had defendant intimated that he did not intend to abide the custom, some other stockholder or one of the directors, all of whom resided in the neighborhood, would have returned the telephone to his place. Also the demand for a rebate of 25 cents was uncalled for. A telephone subscriber must be presumed to know that the instrument is liable to get out of order, and, if situated in the country, that a reasonable time must pass to

secure its repair. There is nothing in the record to warrant a holding that the delay of one week was unreasonable in the instant case; and unless the delay was unreasonable, he would not have been entitled to any allowance for impaired service. *Eastern Kentucky T. & T. Co. v. Hardwick*, 106 S. W. (Ky.) 307. The subsequent charges are based upon the efforts of defendant to forcibly and against the will of plaintiff, and while defendant was in default in the payment of his rental for that very term of six months, compel plaintiff to give him service, and we do not think that he is entitled to collect from plaintiff therefor.

Defendant insists that, as plaintiff had not formally adopted a rule that if subscribers did not pay in advance they would not be given service, the case of *Rushville Co-operative T. Co. v. Irvin, supra,* does not apply. We are of opinion that, in the circumstances of all of the parties to this squabble, it was not necessary for plaintiff to prove the formal adoption of said rule. There is no evidence in the record to indicate that plaintiff arbitrarily discriminated against defendant, or that the same remedy would not have been applied to any other contumacious subscriber. Defendant occupies the unenviable distinction of being the only subscriber who absolutely refuses to pay for the use of a telephone and service. Nor is this case within the principle of *State v. Nebraska Telephone Co.,* 17 Neb. 126. In the cited case the relator had refused to pay an accrued charge and his telephone had been taken out. He thereafter tendered the regulation charge for reinstalling said instrument, and it appeared that he was able, ready and willing to pay according as other subscribers paid, and the rules of the respondent did not exact a prepayment of charges. In the instant case defendant is able, but neither ready nor willing, to pay the charges according to the rules of plaintiff, nor has he tendered the payment exacted from all subscribers alike.

2. In one particular the decree, we think, is erroneous. Plaintiff charges that defendant and members of his

family in the use of the telephone would take down the transmitter when other patrons on the party lines were called, and would listen to conversations not intended for them; that they would sing and whistle into the receiver, and break in on conversations between the other subscribers, and so conduct themselves as to become a nuisance. There is a general finding for plaintiff, and a perpetual injunction against defendant. There is not one scintilla of evidence to sustain the charges above referred to. The evidence shows that plaintiff maintains the only telephone service available for defendant, and he should not be precluded from its benefits if he will pay therefor. Defendant, by tendering $6 to plaintiff, will be entitled to telephone service for six months, and thereafter, by paying that sum twice a year, may have the continued use of plaintiff's telephone, provided that he and the members of his family conduct themselves within the reasonable rules of plaintiff in that use.

The decree should be modified by finding in favor of defendant as to the charges of misconduct in the use of the telephone, and so that he may receive service from plaintiff by paying in advance every six months therefor and abiding by the reasonable rules of the corporation. As thus modified, the decree should be affirmed, and we so recommend.

FAWCETT and CALKINS, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the decree in this case is modified by finding in favor of defendant as to the charges of misconduct in the use of the telephone, and so that he may receive service from plaintiff by paying it $6 semiannually in advance therefor and abiding by the reasonable rules of said corporation. As thus modified, said decree is hereby affirmed.

JUDGMENT MODIFIED.